IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TREVOR TEAGARDEN,

      Petitioner,

                                   **CASE NO. 2:10-CV-495**

v.                             **JUDGE MICHAEL H. WATSON**

                                **Magistrate Judge Kemp**

WARDEN, MADISON
CORRECTIONAL INSTITUTION,

      Respondent.

## REPORT AND RECOMMENDATION

On June 2, 2010, petitioner, a state prisoner, filed a petition for a writ of habeas corpus filed under 28 U.S.C. §2254. The case is before the Court on the Petition, the Return of Writ (Doc. No. 5, filed August 25, 2010), transcripts of the state proceedings (Doc. No. 6, filed August 25, 2010), and petitioner's reply (Doc. No. 7, filed December 22, 2010). For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the petition be denied.

## I. FACTS AND PROCEDURAL HISTORY

According to the petition, petitioner was convicted in the Licking County Court of Common Pleas on charges of rape and gross sexual imposition. On March 22, 2008, he was sentenced to a ten-year term of imprisonment after having been found guilty at a bench trial on one count of rape and three counts of gross sexual imposition. He appealed his conviction to the Fifth District Court of Appeals. In a decision handed down on December 23, 2008, the trial court's judgment was affirmed in part and reversed in part and the case

was remanded for resentencing.  A further appeal to the Ohio Supreme Court was not

allowed.  Petitioner filed his petition in this Court within one year of the date of the Ohio

Supreme Court's decision.

The petition notes that the state court of appeals opinion is reported at 2008 WL

5393143.  The Court will refer to that opinion at various times throughout this Report and

Recommendation.  It is also attached to the Return of Writ as Exhibit 10.  The opinion lays

out the basic facts of this case (excluding, for the moment, most of the facts related to the

investigation) as follows:

> Appellant was indicted on July 9, 2007, on one count of rape of a minor
> under the age of 13, in violation of R.C. 2907.02(A)(1)(b), three counts of gross
> sexual imposition with a child victim under the age of 13, in violation of R.C.
> 2907.05(A)(4), and one count of attempted gross sexual imposition with a
> child victim under the age of 13, in violation of R.C. 2923.02(A), the attempt
> statute, and R.C. 2907.05(A)(4).
>
> * * *
>
> The facts adduced at trial are as follows:
>
> {¶ 4} On June 29, 2007, Appellant was at the residence of Jesse Sharrock, a
> longtime friend. Several people resided at Sharrock's residence in June, 2007,
> including Sharrock's partner, Henry Strong, Sharrock's sister, Shawna
> Sharrock, her minor son, F.S ., and Sharrock's minor daughters, D.S., age 12,
> and A.S., age 10.
>
> {¶ 5} During the afternoon hours of June 29, 2007, Appellant arrived at the
> Sharrock residence. Jesse testified that he had spoken with Appellant several
> days prior to June 29 and knew that Appellant was going to stop by the
> residence on that day.
>
> {¶ 6} A.S. testified that she knew Appellant because he was a friend of her
> dad's. She stated that when Appellant arrived at the house, she was making
> macaroni and cheese with her sister and F.S.

{¶ 7} Later that evening, the kids decided to watch a couple of movies. The first movie that they put in, "Norbit," was playing when Appellant asked A.S. to sit with him on the couch. A.S. testified that she went to sit on the couch with Appellant, and that she was wearing a tank top with a built in shelf-bra and a pair of pajama pants. Appellant pulled a blanket over A.S. up to her shoulders and began playing with her hair and rubbing her back.

{¶ 8} According to A.S., Appellant was laying behind A.S. when he started rubbing her belly and when he began touching the elastic band of her bra under her tank top. A.S. testified that this made her uncomfortable so she went to get a drink of water and then sat on the floor with F.S.

{¶ 9} After "Norbit" finished playing, the kids put the movie, "Epic Movie" on. A.S. stayed on the floor with F.S., and Appellant asked D.S. to sit on the couch with him. D.S. testified that he told her to "come over here and keep me warm."

{¶ 10} When D.S. sat on the couch with Appellant, he pulled a blanket over her up to her shoulders. D.S. testified that she was also wearing a tank top with a shelf-bra and pajama pants. According to D.S., Appellant began playing with her hair, rubbing her belly underneath her shirt, touching her breasts underneath her shirt but over her bra, and then put his hand down her pajama pants and touched her vagina, both inside and out. She stated that she knew he touched the inside of her vagina because it burned. He also told her to turn over and then touched her buttocks.

*2 {¶ 11} As he was touching D.S., he made several comments to her, including, "Do you like that?", "You're really mature for your age," "How many boyfriends do you have?" and "Can we kiss?"

{¶ 12} D.S. testified that she was "really scared" and that she tried to get F.S.'s attention and mouthed the word "help" to him, but that he did not see her.

{¶ 13} Henry arrived home from work while Appellant was on the couch with D.S. He testified that he observed them laying on the couch together and that they had a blanket covering both of them up to their shoulders.

{¶ 14} At some point, Shawna told the kids to go upstairs to bed. Shawna testified that she had taken some Percocets at some point that evening because of her broken ankle and that she fell asleep during the movies, but she thought she woke up around 2:00 a.m. to tell the kids to go to bed. The

-3-

kids went upstairs and A.S. went into the bathroom. When she exited the bathroom, she saw her sister hugging F.S. She said her sister was crying and looked "scared."

{¶ 15} D.S. told F.S. what had happened and stated that "Trevor touched me in inappropriate places." She stated that they were trying to be quiet when they were talking about it because they did not want Appellant to hear them. After D.S. told A.S. and F.S. what had happened, the kids made a plan to throw a glass dolphin at Appellant if he came up the stairs. F.S. wrote a note to his mom, which stated, "Trevor was touching [D.S.] in the wrong spot and was asking her some questions." F.S. then took the note downstairs and tried to get his mom's attention, but she could not see what was on the note and did not find out what happened until later the next morning.

{¶ 16} The kids decided not to wake Jesse up because he had to work in the morning. Appellant was still at the residence when Jesse went to bed between 8:00 and 8:30 p.m. Jesse stated that in the past, he had had problems with Appellant refusing to go home in the evenings and that he sometimes overstayed his welcome. When Jesse woke up the next morning, Appellant was asleep on the loveseat in the living room. Shawna was asleep on the other couch because her broken ankle rendered her partially immobile.

{¶ 17} When Henry woke the kids up the next morning, F.S. told him what had happened. Henry called Jesse and told him what had occurred. Jesse spoke briefly to D.S., who was crying, and then talked to Shawna and told her to tell Appellant to leave, but then changed his mind and told Henry to keep him there while they called the police.

{¶ 18} While Henry called the police, Shawna confronted Appellant about the allegations. Appellant stated that he didn't think that he had touched the girls inappropriately. Shawna stated that right after she asked Appellant about the allegations, he got up and went into the bathroom. She stated that she heard water running in the bathroom for two to three minutes while Appellant was in there. When Appellant exited the bathroom, he was acting "fidgety" and "nervous."

*3 {¶ 19} When Jesse arrived home, he spoke with D.S., and then took her to a medical appointment in Newark, where she was examined by Leslie Dieterich, a pediatric nurse practitioner at Licking Memorial Pediatrics, who also worked at "The Kid's Place," which is a medical facility where children are seen for suspected physical and sexual abuse. Dieterich testified that her

exam of D.S. yielded mostly normal results, with the exception of an abraded fourchet, which was later determined to be unrelated to the alleged assault.

{¶ 20} When taking D.S.'s medical history, D.S. informed Dieterich that she was there because "A guy named Trevor, my dad's best friend, wanted to snuggle with me, so I did."

{¶ 21} Dieterich asked D.S. about any sexual assault and D.S. stated that "he had started playing with her hair and then rubbing me and when I asked where he was rubbing her she pointed across her lower abdomen and stated here and then went down. And when I asked for clarification on that, what she meant when she said he went down, she stated that he went down under her underwear."

{¶ 22} Dieterich testified that D.S. informed her that Appellant "put his hand inside her vaginal and anal areas." Dieterich then testified that she did not observe any evidence of trauma to D.S.'s genital area, but that based on her examination and interview, her diagnosis was that D.S. had been sexually assaulted.

*State v. Teagarden,* 2008 WL 5393143, *1-3 (Licking Co. App. December 23, 2008). This testimony was presented to the trial judge along with testimony from law enforcement personnel concerning their investigation of the claimed sexual assaults. That testimony mainly consisted of officers' statements that, upon being questioned, petitioner admitted having had physical contact with the alleged victims, but denied that it included any inappropriate touching. DNA tests were performed but did not yield any positive results.

Petitioner also testified at trial. He denied any sexual contact with either victim and also stated that Shawna Sharrock was present and awake during the time when the contact allegedly occurred. Following the testimony, the trial judge found petitioner guilty on one count of rape and three counts of gross sexual imposition, all relating to the older victim, D.S. Petitioner was found not guilty of the count relating to A.S. He was sentenced to

seven years in prison on the rape count, and two years on the gross sexual imposition

counts, to run concurrently with each other but consecutively to the sentence on the rape

count.  He was also classified as a Tier III sexual offender.

In his timely-filed appeal, petitioner raised these issues:

{¶ 31} "I. THE DEFENDANT-APPELLANT'S JURY WAIVER WAS UNKNOWING, UNINTELLIGENT AND INVOLUNTARY.

{¶ 32} "II. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY THE IMPROPER ADMISSION OF INCOMPETENT EVIDENCE.

{¶ 33} "III. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY THE IMPROPER ADMISSION OF OTHER-ACTS EVIDENCE.

{¶ 34} "IV. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY THE IMPROPER ADMISSION OF HEARSAY IN VIOLATION OF THE RIGHT OF CONFRONTATION.

{¶ 35} "V. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY THE IMPROPER ADMISSION OF EXPERT TESTIMONY WHICH SPECULATED CONCERNING THE LACK OF DNA EVIDENCE.

{¶ 36} "VI. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY THE IMPROPER ADMISSION OF LAY/EXPERT TESTIMONY CONCERNING THE CREDIBILITY OF CHILD WITNESSES.

*5 {¶ 37} "VII. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY PROSECUTORIAL MISCONDUCT.

{¶ 38} "VIII. THE VERDICT/JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 39} "IX. THE DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 40} "X. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY THE INABILITY TO CONFRONT A PROSECUTION WITNESS CONCERNING THAT WITNESS' BIAS TOWARD HIM.

{¶ 41} "XI. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY CUMULATIVE TRIAL ERROR.

{¶ 42} "XII. THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT-APPELLANT TO CONSECUTIVE, NON-MINIMUM SENTENCES AND IN LABELING HIM A SEXUAL PREDATOR."

*State v. Teagarden,* 2008 WL 5393143, *4-5.  The court of appeals overruled the first eleven assignments of error as well as that portion of the twelfth assignment of error dealing with the imposition of more than the minimum sentences.  However, it noted that petitioner had also argued on appeal that some of the counts should have been merged for sentencing purposes, and the court agreed with that argument, remanding the case with instructions to merge counts three and four with count one for sentencing purposes.

On appeal to the Ohio Supreme Court, petitioner advanced eight propositions of law.  He asserted that he was denied the right to cross-examine a prosecution witness about potential bias; that the trial was marred by the admission of hearsay evidence; that the expert testimony was too speculative to have been admissible; that his conviction was against the manifest weight of the evidence; that the prosecutor engaged in misconduct; that he was denied the effective assistance of counsel; that his waiver of a jury trial was invalid; and that the cumulative effect of these errors denied him due process.  *See Return,* Exhibit 14.  The Supreme Court found that none of these issues (nor the issues raised by the State concerning the resentencing) warranted review.  *See Return*, Exhibit 17.

## II.  THE PETITION

In his habeas corpus petition, petitioner raises six grounds for relief.  They are:

## GROUND ONE

Petitioner was denied his Sixth Amendment right to confront witnesses and his Fourteenth Amendment right to present a complete defense when the trial court prevented him from conducting a reasonable cross-examination of key witness Henry Strong, precluding the finder of fact from obtaining enough information to assess the defense theory of improper motive, and having a substantial and injurious influence upon the verdict.

## GROUND TWO

Petitioner was denied his Sixth Amendment right to counsel through ineffective assistance.

## GROUND THREE

Petitioner's Fourteenth Amendment right to due process was denied through the consistent introduction of contradictory and false evidence.

## GROUND FOUR

Petitioner's Fourteenth Amendment right to due process was denied through cumulative trial error.

## GROUND FIVE

Petitioner suffered deprivation of liberty based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

## GROUND SIX

Petitioner was denied his right to a jury trial through an improper waiver.

In the return, respondent argues that some of the claims of ineffective assistance of counsel subsumed within the second ground for relief were never presented to the state courts and that these claims have been procedurally defaulted. Respondent also argues that the sixth ground for relief was presented to the Ohio courts solely as an issue of state law, and that any federal claim based on the same issue was also procedurally defaulted. Respondent also asserts that none of the six grounds for relief have merit. In his traverse, petitioner

withdrew his third claim, so it will not be discussed further.

### III.  PROCEDURAL DEFAULT

Respondent, citing to *O'Sullivan v. Boerckel*, 526 U.S. 8 (1999), notes that a claim which is raised in federal habeas corpus can be procedurally defaulted at the state level even if the petitioner has taken advantage of every opportunity provided by the state in which to raise claims concerning the conviction and sentence.  One way this can occur is if a claim is not presented to the state courts as a federal constitutional claim, or in such a way that the state courts are fairly apprised that a federal constitutional claim is being raised.  Additionally, respondent points out that under the four-part analysis set forth by the Court of Appeals in *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), a claim can be procedurally defaulted if it is not presented to the state courts at all, so long as there is a regularly-enforced rule within the state court system that such failure precludes the state courts from reviewing the merits of the claim in some other proceeding.

Here, respondent argues that, under the *Maupin v. Smith* analysis, portions of the second claim of ineffective assistance of counsel were procedurally defaulted because, although petitioner made an ineffective assistance of counsel claim in state court, that claim did not address all of the various ways in which counsel is now alleged to have been ineffective.  Those additional allegations of ineffective assistance are, according to respondent, therefore waived.  As to the sixth claim, respondent asserts that the issue of jury waiver was addressed to the state court of appeals only as a claim arising under Ohio law.  Although, in his appeal to the Ohio Supreme Court, petitioner expressly grounded

that claim in the United States Constitution as well, because the Ohio Supreme Court does not ordinarily consider issues not raised in the courts of appeals, respondent claims that this citation to federal authority is not enough to save the issue from procedural default.

As to the second claim, petitioner does not dispute that he has identified in his federal habeas corpus petition some instances of what he believes to have been ineffective assistance of counsel that were never presented to the state courts.  However, it is his position that once an ineffective assistance of counsel claim is raised in state court, the particulars of that claim are more or less irrelevant to the issue of preserving the claim for federal habeas corpus review.  As he puts it, "Respondent argues that each factual example of deficient representation must be re-discussed before each court.  Respondent is mistaken."  Responsive Brief of Petitioner, Doc. #7, at 8.

Clearly, respondent has the better of this argument.  Courts within this circuit, including the Court of Appeals, have held that in order for each claim or "sub-claim" to be properly presented, exhausted, and not waived, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).  In that case, the court held that because one of petitioner's ineffective assistance of counsel claims involved "a theory which is separate and distinct from the one previously considered and rejected in state court," that particular claim of ineffective assistance of counsel had been procedurally defaulted.  *See also Sneed v. Johnson*, 2007 WL 709778 (N.D. Ohio March 2, 2007); *Fautenberry v. Mitchell*, 2001 WL 1763438, *13 (S.D. Ohio December 26, 2001) ("Petitioners cannot

-10-

present a set of facts to the state courts under one legal theory, and then present the same facts to the federal court under a different legal theory").  Under this rationale, "sub-claims" of ineffective assistance of counsel not presented to the state courts under the umbrella of a general ineffective assistance counsel claim are routinely viewed as having been waived.  *See, e.g., Lundgren v. Mitchell*, 440 F.3d 754, 769 (6th Cir. 2006) (holding that six of nine alleged instances of ineffective assistance of counsel due to failure to object to evidence during trial were waived because of the failure to raise those specific sub-claims on appeal).

Were the rule otherwise, a petitioner could simply make a generalized claim of ineffective assistance of counsel in state court and then raise additional instances of such conduct in a federal habeas corpus petition without facing a procedural default.  That way, the petitioner could avoid both an adverse ruling by the state court to which the federal court would owe deference under 28 U.S.C. §2254(d), and the petitioner could bypass the state court's specific consideration of those issues and deprive the state court of the opportunity to correct its own errors without the need for federal court intervention.  That would run directly counter to the rationale behind the exhaustion and fair presentation doctrines, however, which serve to "protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings."  *Rose v. Lundy*, 455 U.S. 509, 517 (1982).  It is not strictly necessary to rule that these particular claims have been procedurally defaulted, however, because, as the discussion below will indicate, the Court finds all of petitioner's ineffective assistance of counsel claims to be without merit.

-11-

As to claim six, respondent argues the claim was waived by petitioner's failure to argue to the Fifth District Court of Appeals that his decision to waive a jury trial was invalid under the Sixth and Fourteenth Amendments to the United States Constitution. Whether such a waiver occurred depends upon how the issue was presented both in petitioner's assignment of error and his brief; whether the court of appeals actually perceived such an issue and resolved it is irrelevant. *See, e.g., Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). However, in order fairly to present the issue, petitioner's filings in the state court must reflect one of the following: " (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

Petitioner's first assignment of error on appeal was that his jury waiver "was unknowing, unintelligent and involuntary." In his appellate brief, he described the issue presented as "Must a criminal defendant be specifically apprised when waiving trial by jury in favor of a bench trial that he is waiving his right to jury unanimity as guaranteed by Article I, Sections 5 and 10 of the Ohio Constitution?" (Return of Writ, Exhibit 7). As respondent acknowledges, the brief cites to a fair number of cases decided by federal courts (at least eleven, by the Court's count) dealing with the question of whether a waiver of a constitutional right is valid. A representative case, also cited by petitioner in this Court on the merits of his claim, is *United States v. Martin*, 704 F.2d 267 (6th Cir. 1983), which

-12-

addressed the question of when a defendant's waiver of a jury trial is voluntary, knowing and intelligent - the same issue presented here, and, in *Martin*, an issue of federal constitutional dimension.

It is understandable that, in light of the way the issue was framed in the state court, respondent has taken the position that only a state law challenge to the jury issue was raised.  However, as this Court reads the brief, the references in the "issue presented" statement to the Ohio Constitution were not to any provision of that document that relates to how to execute a valid jury waiver, but to those provisions which guarantee a criminal defendant a right to a unanimous jury verdict.  Petitioner claimed in the state court, and claims here, that before he waived his right to a jury trial - which is a right guaranteed to him not only by Article I, Section 5 of the Ohio Constitution, but by the Sixth Amendment to the United States Constitution as incorporated by the Due Process Clause of the Fourteenth Amendment, *see Duncan v. Louisiana*, 391 U.S. 145 (1968) - he had to have been informed that any jury verdict in his case would need to be unanimous.  The unanimity requirement, at least in petitioner's case, is derived exclusively from state law, because although the United States Constitution requires that the states provide jury trials to persons accused of serious crimes, it does not require that the verdicts in such cases be unanimous.  *Johnson v. Louisiana*, 406 U.S. 356 (1972).  Thus, petitioner correctly cited to Ohio law as the exclusive source of the right to a unanimous jury verdict, but he also cited numerous cases interpreting federal constitutional law on the issue of when a waiver to the right to a jury trial - unanimous verdict or not - is valid.  This issue was therefore fairly

presented to the state court of appeals as a federal constitutional issue and was not waived for purposes of federal habeas corpus review.  The Court now turns to its discussion of the merits of petitioner's five remaining claims.

## IV.  CLAIM ONE

In his first claim, petitioner argues that he was not allowed to conduct a full cross-examination of Henry Strong.  Mr. Strong was the one who reported petitioner's actions to the police.  Petitioner believes that Mr. Strong was biased against him based on jealousy, and his counsel attempted to cross-examine Mr. Strong about a particular incident that could have illustrated his motive to testify against petitioner.  He claims that the trial court's decision not to permit this specific inquiry violated his right to due process as well as his right to cross-examine the witnesses against him.  In his traverse, he amplifies this claim by arguing that this cross-examination might also have shown the jury that Mr. Strong might have encouraged one of the victims to make up her allegations in order to "eliminate a romantic rival for Jesse Sharrock."  Traverse, Doc. #7, at 12.  The trial court sustained an objection to any testimony on this subject based on the lack of evidence that Mr. Strong had ever discussed his feelings about petitioner with either of the victims.

The state appellate court addressed this claim in the following way:

{¶ 126} In his tenth assignment of error, Appellant argues that he was denied a right to a fair trial because he was prohibited from cross-examining a prosecution witness on that witness's bias toward him.

{¶ 127} The Sixth Amendment to the U.S. Constitution provides an accused with the right to confront witnesses against him on the basis of bias against the defendant. Moreover, Evid. R. 616(A) provides that a witness may be

-14-

impeached by "[b]ias, prejudice, interest, or any motive to misrepresent."

{¶ 128} While the cross-examination of a witness is a matter of right, the "extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court." State v. Green (1993), 66 Ohio St.3d 141, 147, 609 N.E.2d 1253, quoting Alford v. United States (1931), 282 U.S. 687, 691, 694, 51 S.Ct. 218, 75 L.Ed. 624.

{¶ 129} Evidence of possible bias on the part of Henry Strong against Appellant was introduced at trial. Specifically, on cross-examination, trial counsel asked Jesse Sharrock if there was any animosity between Henry and Appellant. The following exchange took place between counsel and Jesse:

{¶ 130} "Q: Was there any animosity between Henry and Mr. Teagarden?

{¶ 131} "A: There had been in the past, yes.

{¶ 132} "Q: What kind of incidents?

{¶ 133} "A: There was a jealousy issue.

{¶ 134} "Q: In what-

{¶ 135} "A: Well, Henry could-he could be a jealous person.

{¶ 136} "Q: Okay.

{¶ 137} "A: Me and Trevor had been good friends.

{¶ 138} "Q: So he was jealous of your friendship?

{¶ 139} "A: Correct."

{¶ 140} On redirect, the prosecutor followed up with the following question:

{¶ 141} "Q: Defense attorney asked you some questions about Henry's relationship with the defendant, that there were some jealousy issues. Did you ever talk to your children about those issues?

{¶ 142} "A: No, I do not.

-15-

{¶ 143} "Q: Why not?

{¶ 144} "A: I believe it's an adult situation."

{¶ 145} Trial counsel attempted to address the issue of bias with Henry Strong and the prosecutor objected as to relevance. Trial counsel, in responding to the objection, stated that he was seeking to introduce the evidence "as motive as to why these children may have lied." Though the evidence would have been relevant as to Mr. Strong's personal bias against Appellant, it was not admissible to stack inferences to demonstrate why a third party might have lied. Moreover, evidence of the animosity between Mr. Strong and Appellant had already been admitted, and therefore was already properly before the trial court to consider when judging the witness' credibility.

{¶ 146} Accordingly, Appellant's tenth assignment of error is overruled.

*State v. Teagarden*, 2008 WL 5393143, *15.  From this analysis, it is clear that the state court rested its decision on two grounds: that, as to Mr. Strong's own bias, any additional evidence would have been cumulative; and, as to the possible motivation of the victims to fabricate the incidents, any additional evidence was irrelevant because it would invite the jury to "stack inferences" about their motivations.

Petitioner agrees that the Court must review this and any other claim which was decided by the state courts on the merits under the deferential standard of review found in 28 U.S.C. §2254(d).  As this Court has explained that standard,

When the claims presented in a habeas corpus petition have been presented to and decided by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. § 2254(d) provides:

-16-

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> As the Supreme Court has explained, "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Harbison v. Bell*, 408 F.3d 823, 829 (6th Cir. 2005). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.*, at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." *Id.*, at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than de novo review. *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

*Robertson v. Sheets*, 2011 WL 550049, *3-4 (S.D. Ohio February 8, 2011). This is the standard the Court will apply here.

The only pertinent case cited by the court of appeals was *State v. Green*, 66 Ohio St.3d 141 (1993). *Green* involved the cross-examination of a witness about prior statements she had made to the police. After a cross-examination which was, as the court pointed out, "three times longer than direct," the three-judge panel invited counsel to stipulate as to the statements which were made and did not allow further questioning on whether the witness actually recalled the substance of each particular statement. *Id.* at 147. The court, citing to

-17-

*Alford v. United States*, 282 U.S. 687 (1931), held that the trial court's action fell within the broad range of discretion it had to prevent repetitive or marginally relevant questioning. *Green* also cited other United States Supreme Court decisions such as *Davis v. Alaska*, 415 U.S. 308 (1974) and *Delaware v. Van Arsdall*, 475 U.S. 673 (1986) for the same proposition. Thus, by citing to *Green*, the state court of appeals referred to controlling federal authority on the issue of when a trial court may, within constitutional limits, curtail cross-examination. Therefore, the only question the Court must answer is whether the state court applied that authority in an unreasonable fashion.

Petitioner does not couch his argument directly in terms of the reasonableness or unreasonableness of the state court's decision on this issue. Rather, he appears to argue that one of the fundamental features of the right to cross-examine a witness for potential bias is the right to make the trier of fact (in this case, the trial judge) aware of the facts which demonstrate the witness' bias. He contends that by cutting off cross-examination on grounds that the questions about Mr. Strong's jealous feelings toward petitioner as a potential rival for Jesse Sharrock's affection were irrelevant to the question of why either of the complaining witnesses may have lied, the trial court erred. In fact, petitioner asserts, had these facts been elicited through further questioning, the trial judge could have been persuaded that Mr. Strong encouraged one or both of the victims to lie about what occurred, and did so out of jealousy.

The fact that the trial court declined to allow the questioning because of the lack of evidence that Mr. Strong ever discussed his feelings about petitioner with either of the

victims simply illustrates, according to the petitioner, the extent of the error, because in accepting Mr. Strong's testimony on this point without hearing evidence that affected his credibility, the trial judge "erred by presuming to determine a fact in issue in the case." Responsive Brief of Petitioner, Doc. #7, at 15.  Petitioner also strongly disputes the court of appeals' conclusion that the evidence about Mr. Strong's potential bias had otherwise been presented to the trial judge.  Presumably, because it quoted at length from the examination of Jesse Sharrock on this same issue, the court of appeals was referring to this testimony as having brought out Mr. Strong's jealous feelings toward petitioner and his possible reasons for persuading one or both of the victims to make up their stories.

The primary case upon which petitioner relies, *Boggs v. Collins*, 226 F.3d 728 (6th Cir. 2000), does not ultimately support his argument here.  It is true that *Boggs* emphasizes the central role which cross-examination on issues of bias plays in the exercise of the Sixth Amendment right to confront adverse witnesses in a criminal prosecution.  It also notes, however, that the Sixth Amendment does not guarantee a criminal defendant the right to cross-examine a witness in any way he or she may wish, but only in a way that is "'effective....'"  *See id., quoting Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).  Further, a court reviewing a decision to curtail cross-examination must "assess whether the [trier of fact] had enough information ... to assess the defense theory of bias or improper motive" and, if not, must determine if the reasons given for cutting off the cross-examination are weighty enough to justify the trial court's ruling.  In *Boggs* itself, the Court rejected a Sixth Amendment challenge to the trial court's refusal to allow cross-examination of a witness

-19-

on issues which went only generally to the witness' credibility but not to specific bias or motivation to lie in the case before the court, finding that core Sixth Amendment rights were not implicated by this limitation.

Here, unlike the situation in *Boggs*, the evidence which petitioner sought to adduce from cross-examining Mr. Strong may have touched on his motivation to testify falsely against petitioner.  However, Mr. Strong's testimony was not particularly critical to the prosecution's case because he was not an eye-witness to the events in question.  His direct testimony was short and involved matters about which there was no significant dispute. The single question to which an objection was sustained - "Did – do you have any personal problems with Trevor?" - to the extent that it may have been a question directed to Mr. Strong's specific bias or motivation to lie , was not particularly key to the evaluation of his testimony because counsel never suggested, even in responding to the objection, that Mr. Strong was actually lying about the matters to which he testified.  Thus, there is really no viable Sixth Amendment claim to be made regarding whether the trial court improperly limited cross-examination that went directly to the bias or motivation to fabricate of the witness being cross-examined.

The crux of petitioner's argument is reflected in that portion of his responsive memorandum which focuses not on an alleged violation of his right to cross-examine Mr. Strong effectively, but on his right to present an effective defense.  That right is not completely derived from the Sixth Amendment right to confront witnesses, however, but represents a conglomeration of the Sixth Amendment rights to confront one's accusers and

-20-

to compulsory process and the Fourteenth Amendment's guarantee of due process of law. *Homes v. South Carolina*, 547 U.S. 319, 324 (2006).  Petitioner did not articulate this theory in his briefs to the Fifth District Court of Appeals; rather, he consistently argued that the issue was not whether Mr. Strong might have improperly influenced other witnesses to testify falsely, but whether Mr. Strong himself was biased and therefore presented false testimony about having seen petitioner lying on the couch with one of the victims at the time Mr. Strong returned home from work.  That testimony does not appear to have been crucial to the prosecution's case and petitioner does not mention it in his responsive brief filed here.  Thus, there is a good argument to be made that any issue concerning the right to present an effective defense through further examination of Henry Strong has been waived.

Even if it were not, this claim lacks merit.  The trial court did not, as petitioner argues, make a "blanket preclusion of evidence of Strong's bias" which "left the trier of fact with insufficient facts to evaluate the defense's theory of the case."  Responsive Brief of Petitioner, Doc. #7, at 16.  The key theory of the defense was, of course, that the victims fabricated their claims of sexual misconduct and that none of the events happened.  There were many facts before the trial judge which went to that theory.  One portion of the theory, and not a particularly large part, was that at least one of the victims was encouraged by Mr. Strong to make up her story so that Mr. Strong could be rid of petitioner as a rival for Jesse Sharrock's affection.  There was absolutely no direct evidence of that, and the victims themselves did not testify to having any such conversations with Mr.

Strong or being influenced in any way by him. Nevertheless, the trial court did allow Jesse Sharrock to be questioned about whether Mr. Strong was jealous of petitioner, so that fact, which, according to petitioner, was crucial to his defense, was before the trier of fact. The trial judge also understood the basis of that argument because it was articulated by trial counsel when the objection was made to the question posed to Mr. Strong about his feelings toward petitioner, and the trial judge gave it little weight because it would have involved an attenuated chain of inferences - that Mr. Strong was jealous of petitioner, that he therefore wanted petitioner to be sent to prison, that he therefore asked one or both victims to make up stories about what happened, and that the victims were in fact persuaded by him to do so - which, under Ohio law, would have been irrelevant. There is no way that the court's ruling can be characterized as having excluded evidence which "'creates a reasonable doubt that did not otherwise exist.'" *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006), *quoting Washington v. Schriver*, 255 F.3d 45, 57 (2d Cir. 2001). Thus, assuming this claim was not defaulted, whether the Court reviews this issue *de novo* because there is no state court decision on the issue, *see Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir. 2005) , or gives some deference to the result of the state court decision on petitioner's Sixth Amendment claim, *see Lovell v. Duffey*, 629 F.3d 587, 594 (6th Cir. 2011), the result is the same - the claim lacks merit.

## IV. CLAIM TWO

In his second claim, petitioner asserts that his trial counsel was constitutionally ineffective in a number of different ways. He has lumped his arguments into two broad

-22-

categories: the failure to object to inadmissible evidence, and the failure competently and zealously to advocate a defense.  Respondent contends that counsel's performance passes muster under the familiar *Strickland* test and that the state court's denial of relief on this claim was not unreasonable.

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14  (1970). The standard for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Scrutiny of defense counsel's performance must be "highly deferential." *Id*. at 689.

With respect to those aspects of this claim that were presented to the Fifth District Court of Appeals, that court held as follows:

> {¶ 113} In his ninth assignment of error, Appellant argues that he was denied the effective assistance of counsel.

> {¶ 114} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that his trial counsel acted incompetently. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be

considered sound trial strategy.' " *Id*. at 689, *quoting Michel v. Louisiana* (1955), 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83.

{¶ 115} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id*. at 690.

{¶ 116} Even if a defendant shows that his counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

{¶ 117} Appellant first claims that trial counsel was ineffective for allowing Appellant to waive a jury trial and try the case to the court. Appellant cites no case law to support this argument. Moreover, the record demonstrates that trial court's questions to Appellant before trial showed that Appellant understood the ramifications of waiving his right to a jury trial, that the decision was his own, and that he had consulted with counsel before making that decision. There is nothing in the record indicating counsel's advice regarding whether Appellant should waive his right to a jury trial. Accordingly, we cannot conclude that counsel was ineffective in the manner argued by Appellant. *State v. Turnbow*, 5th Dist. No.2005CA00026, 2005-Ohio-6702, at ¶ 30

*14 {¶ 118} Appellant next argues that counsel was ineffective for failing to object to the hearsay testimony of Detective Phillips, Heidi Ballengee, and Max Larijani, as well as the "bolstering" testimony pertaining to D.S.'s credibility. Having already determined that the testimony was properly admitted, Appellant's claim of ineffectiveness on this issue is overruled.

{¶ 119} Additionally, Appellant argues that counsel was ineffective for failing to object to leading questions, the use of the word "lie" and the burden shifting of the prosecutor. Having already determined that no prosecutorial misconduct occurred, Appellant's claim is overruled.

{¶ 120} Regarding Appellant's claim that trial counsel should have pointed out inconsistencies in this case, a thorough review of the record shows that counsel did do this. In making his Rule 29 motion at the end of the case,

counsel stated:

{¶ 121} "At this point I would make a Rule 29 motion that the prosecution has not fulfilled their prima facie burden based on the fact that there's no physical evidence of-of this allegation. The only thing we have are inconsistent testimony between these children. The prosecution is trying to prove a positive by a negative. They would like to say that, well, because there's no trauma, he must have done it, and with the DNA, they're saying, well, because there's no DNA he must have done it, so really all we're left with is inconsistent testimony with these children.

{¶ 122} "And that being said, the specifics that I'm pointing to are [A.S.] said that they didn't wake up the father because they-they wanted to let him sleep because-so he could get rest for work, but then [F.S.] and [D.S.] really didn't know why. [D.S.] stated-or, I'm sorry [F.S.] stated that he did slide a note under the door, but obviously Mr. Strong testified that there was no note under the door when he woke up.

{¶ 123} "The timeline is inconsistent throughout all three of these children as they testified. [F.S.] remembers Jesse sitting and watching this movie, but then [A.S.] testified that ... Jesse had gone to bed. There also is a Henry Strong's testimony saying that when he got in at 11:45 and looked in the living room, he did not see any indications of any-any criminal activity afoot. Then when he went back at 12:15, he did not see any indications of any criminal activity and that Shawna was awake. She testified she wasn't. Now she's mysterious-you know, she's conveniently saying she remembers Mr. Teagarden washing his hands. I just think the inconsistencies in this testimony would lead to-would lead one to believe that the prosecution has not fulfilled their prima facie burden and proven their case."

{¶ 124} He again reiterated these problems with the state's case in closing arguments. Counsel also vigorously cross-examined witnesses throughout the trial. Nothing in the record indicates that counsel acted ineffectively.

*15 {¶ 125} For all of these reasons, Appellant's ninth assignment of error is without merit and is overruled.

From this discussion, it is apparent that the state court both identified the controlling

federal standard for evaluating an ineffective assistance of counsel claim, and interpreted

that standard correctly.  Therefore, as with petitioner's first claim, the issue for this Court to resolve is whether the state court's application of this standard was unreasonable.

In his responsive memorandum, petitioner fleshes out the first portion of this claim with the following particulars.  The inadmissible evidence to which he contends counsel should have objected included the testimony of Heidi Ballengee, a social worker, about why a child victim of sexual abuse might not immediately report what occurred.  He contends that this evidence was inadmissible under Ohio R. Evid. 701 because Ms. Ballengee was never qualified as an expert.  He also argues that an objection should have been made to questions posed, or answers given, by Leslie Dieterich, a nurse practitioner, who was permitted to testify that her physical examination of victim D.S. was "mostly" normal but that she did observe some abrading of an area below D.S.'s hymen.  Because there was never any testimony explaining the significance of this finding, petitioner contends that Ms. Dieterich's statements were irrelevant and prejudicial.  Petitioner also claims that counsel should have objected to Ms. Dieterich's repetition of statements made to her by D.S., which he concedes were "constitutionally permissible" but to which the trial court might have sustained an objection under the Ohio Rules of Evidence.  He also faults counsel for not objecting to a note written by witness Freddy Stinson, which also repeated some of D.S.'s allegations about abuse, and for not objecting to certain leading questions directed to Shawna Sharrock, D.S.'s aunt, concerning her condition on the night in question.  Petitioner asserts that all of this evidence was inadmissible for one reason or another and that it served to bolster the otherwise uncorroborated testimony of the victim,

thereby prejudicing petitioner's defense.  Again, he does not specifically state how the state court's resolution of this portion of the claim constitutes an unreasonable application of controlling federal law.

The state court addressed both the allegedly inadmissible testimony of Ms. Ballangee and the "bolstering" testimony by concluding that counsel could not have been ineffective for failing to object because the testimony was, in fact, admissible.  It specifically determined that Ms. Ballengee's testimony did not serve to bolster the allegations made by the victims, but rather explained why they might have waited until the morning to report the abuse.  It also determined that the statements made to Nurse Dieterich were admissible under Ohio R. Evid. 803(4) and were not used to bolster the victim's testimony nor to vouch for it.  It made no ruling about whether her opinion about some abrading of the hymen was admissible because petitioner did not raise that issue on appeal, nor did it determine if Ms. Ballangee could have been qualified as an expert to testify about a child's potential motivation for delaying reporting abuse because, again, that issue was not presented on appeal.  At least implicitly, however, it determined that such testimony was not prejudicial.

Of all of the evidence to which petitioner claims an objection should have been made, the most damaging would appear to have been the testimony from Nurse Dieterich which reiterated the allegations made by D.S.  She testified that all of these statements were made in the context of a complete medical examination, which the state court of appeals explicitly found to have satisfied the prerequisites for admitting such testimony under

Ohio Evid. R. 803(4).  This Court is bound by the rulings of a state court as to issues of state evidence law.  *See Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) ("'[t]he federal courts must defer to a state court's interpretation of its own rules of evidence and procedure.'"), *quoting Machin v. Wainwright* 758 F.2d 1431, 1433 (11th Cir.1985).  Consequently, the Court simply may not entertain petitioner's argument that statements concerning the identity of petitioner as the assailant were not made for purposes of medical treatment and were therefore inadmissible under Ohio Evid. R. 803(4).

None of the other evidence to which petitioner claims counsel should have objected was so prejudicial that it reasonably calls into question the result of the trial.  The trial judge was presumably able either to disregard the testimony concerning the abrading of the area near D.S.'s hymen precisely because there was no other evidence indicating this to be a significant finding, and he excluded many hearsay statements made by the victims.  Additionally, the state court's determination that most of this evidence did not constitute improper bolstering of the victims' testimony is not an unreasonable conclusion.  Further, even if Ms. Ballengee had not been strictly qualified to give expert testimony, the trial judge was presumably able to weigh her opinion testimony properly in light of the information he had concerning her employment as a child abuse and neglect investigator and her employment with Licking County Children's Services, during which she investigated about 200 such cases over a four-and-a-half year period and had specific training in the area of delayed reports of abuse.  There is no indication that, had an objection been made, the trial judge would not have found her qualified, or that he would not have allowed a foundation

-28-

to be laid beyond that already in the record showing that she was.  Given the fact that this record appears amply to demonstrate her qualification to express these opinions, counsel could well have chosen not to object on that ground in order to prevent further information which would bolster Ms. Ballengee's credibility to come before the court (although the prosecutor did, after an objection was lodged on other grounds, amplify her background and experience in this area), especially since the testimony about delayed reporting was somewhat peripheral to the petitioner's guilt or innocence.  The claim that petitioner was prejudiced by a few short leading questions to Shawna Sharrock is also without much substance; the evidence as to her condition was before the court and could have been elicited without leading questions, so the absence of an objection to those questions was not likely prejudicial.  In short, the result reached by the state court as to all of the alleged "bolstering" evidence, namely that counsel's performance was not deficient because the evidence was both admissible and non-prejudicial, is a reasonable one, and petitioner has failed to demonstrate otherwise.

The second prong of petitioner's ineffective assistance of counsel claim is trial counsel's alleged failure to develop a coherent theory of defense and zealously to advance it.  This claim is founded upon the evidence that Henry Strong was jealous of petitioner and was motivated to get the victims to fabricate their stories.  Counsel is faulted for failing to be more persistent in developing this theme of the case, particularly in the cross-examination of Henry Strong, even though, as noted above, the trial court sustained an objection to the question that counsel did ask about this subject.  To the extent that this

claim mirrors in part the claim addressed by the state court of appeals concerning counsel's alleged failure to point out inconsistencies in the prosecution's case, that court's determination that, as a matter of fact, counsel did so repeatedly, is binding and also is supported by the record.  To the extent that the claim raised here is different, for the reasons set forth in section II above, it has likely been waived.  Even if that were not so, it is difficult to fault counsel for the failure to pursue a line of questioning which the trial court had ruled to be improper.  *See, e.g., Hodge v. Haeberlin*, 579 F.3d 627 (6th Cir.  2009). Further, it is not at all clear that the argument that Henry Strong was the moving force behind all of the allegations would have been as persuasive as petitioner contends; it is difficult to see how, in the short time when he interacted with both victims in the morning after the assault, he could have persuaded them each to make up a story of sexual abuse, provide them with the necessary details for them to relate credibly to a myriad of investigators, and have them recount those details consistently over time, including at the trial, where both were subject to cross-examination.  Putting forth this argument may well have detracted from the force of counsel's other argument, which was that the evidence was sufficiently inconsistent and uncorroborated so that the state's case had not been proven beyond a reasonable doubt.  The choice to focus on that argument and not the issues between petitioner and Henry Strong could have been a deliberate choice on counsel's part, and it is not unreasonable to deny relief on grounds of ineffective assistance of counsel when the challenged action can be properly characterized as a strategic choice. *See Strickland*, 466 U.S. at 689 ; *see also Robinson v. Davis,* 2011 WL 678428, *2 (6th Cir. Feb

-30-

25, 2011).  Therefore, neither prong of petitioner's ineffective assistance of counsel claim warrants granting relief.

## V.  CLAIM FOUR

Petitioner asserts, in his fourth claim for relief, that the cumulative effect of the errors committed by and in the trial court violated his rights under the Due Process Clause. It is unclear exactly what combination of trial errors petitioner relies upon as the basis of this claim.  In his petition, he phrases the claim as follows: "Even if, individually, the denial of effective opportunity to cross-examine witnesses, the pervasive inconsistencies in the testimony of prosecution witnesses, the prejudicial evidence admitted, and the ineffectiveness of counsel are insufficiently prejudicial to afford relief, they cumulatively resulted in significantly prejudicial trial error and served to deny Petitioner his right to due process of law and a fair trial."  Because he has abandoned his third claim, and addresses his fourth claim in only brief fashion in his responsive memorandum, there is some uncertainty about whether the subject of his third claim - the alleged introduction of contradictory and false evidence - remains a part of this "cumulative trial error" claim. Even if it does, this claim lacks merit.

This claim was presented to the state court of appeals as the eleventh assignment of error.  The court of appeals discussed it only briefly, noting that although Ohio law permits cumulative trial error to be used as a basis for reversal if the effect of those cumulative errors was to deprive a defendant of his right to a fair trial, "we do not find that there have been multiple instances of harmless error triggering the cumulative error doctrine."  *State*

*v. Teagarden*, 2008 WL 5393143, *16.  Again, as with his other claims, petitioner does not specifically argue that this was an unreasonable application of federal law.  Moreover, he candidly acknowledges that in *Williams v. Anderson*, 460 F.3d 789 (6th Cir. 2006), the Court of Appeals held that cumulative error claims are not cognizable in federal habeas corpus. He suggests, however, that given the reluctance with which the *Williams* court made that observation, it might no longer be good law.

Like the state court, this Court has found that the errors claimed by petitioner regarding the introduction of inadmissible evidence and the ineffective assistance of trial counsel were not, in fact, errors at all.  However, it is unnecessary to reach the merits of the claim or to determine if the state court acted unreasonably in overruling petitioner's eleventh assignment of error because this Court has continued to follow *Williams* and the related line of cases holding that cumulative error claims may not form the basis for habeas corpus relief.  *See, e.g., Jones v. Bagley*, 2010 WL 654287, *87 (S.D. Ohio February 19 2010); *Long v. Warden, Warren Correctional Institution*, 2009 WL 3169964, *26 (S.D. Ohio September 28, 2009).  Thus, the Court holds that petitioner's fourth claim does not provide any basis on which habeas corpus relief might be granted.

## VI.  CLAIM FIVE

Petitioner's fifth claim is a somewhat convoluted attack on the sufficiency of the evidence.  In the state court of appeals, although he asserted that his conviction was against the manifest weight of the evidence, petitioner did not challenge the evidence as constitutionally insufficient to support his conviction.  Perhaps recognizing that if he

presented such a claim here, it would be subject to the defense of procedural default, he has

phrased his fifth claim as arising under 28 U.S.C. §2254(d)(2), which provides that

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim--
>
> (2)  resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

By its language, §2254(d)(2) presupposes that there is a "claim" for habeas corpus

relief that was "adjudicated on its merits in State court proceedings ...." Here, petitioner

has not identified any such "claim" about which he believes the facts were unreasonably

determined; rather, as he states in his responsive memorandum, it is his "conviction [that]

was based on an unreasonable determination of facts in light of the evidence" - namely, the

evidence presented at his trial. Responsive Memorandum, Doc. #7, at 23. He argues that

the only direct evidence was victim D.S.'s testimony and that this testimony was simply

incredible given all of the circumstances surrounding the supposed commission of the

sexual assault.

Not surprisingly, petitioner has cited no case law in support of the proposition that

§2254(d)(2) provides an independent basis for relief in a case where the evidence is

allegedly insufficient to support the conviction itself. In fact, it does not. As the court in

*Lambert v. Blodgett*, 393 F.3d 943, 971 (9th Cir. 2004) observed, §2254(d)(2) (along with its

counterpart in §(d)(1)) "address whether, and to what extent, a federal district court is

bound by state court findings on any of the dispositive factual questions presented  in the habeas corpus petition."  Whether petitioner is actually innocent is not a dispositive factor in this case, both because he did not raise that claim independently, and because in this type of case, actual innocence is not a cognizable claim.  *See Herrera v. Collins*, 506 U.S. 390, 400-01 (1993); *Harsh v. Warden, Chillicothe Correctional Inst.*, 2009 WL 3378246, *18 (S.D. Ohio October 15, 2009).  Moreover, he did not raise any such claim in the state courts.  To read the statute as petitioner suggests would be to excuse a petitioner's failure to make a sufficiency of the evidence claim in state court, to elevate the test found in §2254(d)((2) to constitutional status, and to circumvent the rule that a claim of actual innocence is not an independent basis for federal habeas corpus relief in a non-capital case.  The Court cannot accept any of these results, and therefore agrees with respondent that claim five is not an independent basis for awarding habeas corpus relief.

## VII.  CLAIM SIX

Petitioner's last claim here (and his first assignment of error to the Fifth District Court of Appeals) relates to his decision to waive a jury trial in state court.  He claims that the waiver did not meet constitutional standards because, before he chose to waive a jury and be tried by a single judge, he was not specifically informed that if he elected a jury trial, the jury's vote for conviction had to be unanimous.  Respondent contends that the United States Constitution does not require that information to be given to a defendant who waives a jury trial, and that the waiver taken here met all applicable constitutional standards.

-34-

In resolving this issue against petitioner, the state court of appeals reasoned as follows:

{¶ 43} In Appellant's first assignment of error, he argues that his jury waiver was not knowing, voluntary and intelligent because the trial court did not advise him of his right to a unanimous jury verdict, his right to participate in jury selection, his right to peremptory and for cause challenges, and his right to have the facts of his case tried solely to a jury.

{¶ 44} Ohio Revised Code 2945.05 governs the waiver of the right to a jury trial. R.C. 2945.05 states, "In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows: "I _____, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury."

{¶ 45} This jury trial waiver is required to be made in open court after the defendant has been arraigned and after he has had opportunity to consult with counsel and may be withdrawn by the defendant at any time before the commencement of the trial. *Id.*

{¶ 46} Provided that the waiver is written, signed by the defendant, made in open court and filed with the court, "[t]he Criminal Rules and the Revised Code are satisfied" *State v. Jells* (1990), 53 Ohio St.3d 22, 26, 559 N.E.2d 464; *see also State v. Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, 872 N.E.2d 279. A written waiver is presumed to be voluntary, knowing, and intelligent. *Lomax*, at ¶ 10, citing *State v. Bays* (1999), 87 Ohio St.3d 15, 19, 716 N.E.2d 1126.

{¶ 47} A trial court is not required to inform a defendant of all possible implications of a jury trial waiver. *State v. Green* (2000), 90 Ohio St.3d 352, 367, 738 N.E.2d 1208. There must only be some evidence in the record that the defendant acknowledged, in open court and in presence of counsel, if represented, that he desires to waive his right to a jury trial. *Lomax, supra*, at ¶ 42. In this case, the trial court asked Appellant whether Appellant had discussed the matter fully and completely with his attorney, to which Appellant replied "completely." The court also asked Appellant if he wished

to waive his right to a jury trial, and Appellant affirmed that he did wish to do so. Appellant further stated that he had not been threatened to make the determination to waive his right to a jury trial and that he was waiving the right freely and voluntarily. He then signed a written waiver of trial by jury in open court, which was filed on February 21, 2008, prior to the commencement of trial.

{¶ 48} This court has previously held that nothing in R.C. 2945.05 requires that a trial court engage in a colloquy with the defendant before accepting his waiver of a jury. Specifically, we found that there is no explicit requirement in Crim.R. 11(C)(2)(a) that a defendant be informed of his right to a unanimous verdict. *State v. Molla*, 5th Dist. No. 07-CA-140, 2008-Ohio-5331, at ¶ 19. Moreover, we held that "a defendant need not have a complete or technical understanding of the jury trial right in order to knowingly and intelligently waive it." *Id.* at ¶ 21, citing *State v. Bays* (1999), 87 Ohio St.3d 15, 20, 716 N.E.2d 1126.

{¶ 49} Accordingly, because Appellant did execute a valid waiver in open court, and because the court complied with the mandates of R.C. 2945.05, Appellant's first assignment of error is overruled.

*State v. Teagarden,* 2008 WL 5393143, *5-6.  Although the state court did not cite directly to any cases from federal courts, it did rely on the Ohio Supreme Court's decision in *State v. Bays*, 87 Ohio St.3d 15 (1999).  *Bays*, in turn, cited three federal cases *(United States ex rel. McCann,* 317 U.S. 269 (1942), *United States v. Sammons*, 918 F.2d 592 (6th Cir. 1990), and *United States v. Martin,* 704 F.2d 267  (6th Cir. 1983)), for the proposition that in order for a written jury waiver to be invalidated, the burden is on the defendant to show that the waiver was not voluntary, knowing and intelligent, and that such waivers are presumptively valid.  That appears to be a correct statement of the law.  *See Sammons*, 918 F.2d at 597 ("Compliance with the writing requirement set out in Federal Rule of Criminal Procedure 23(a) 'creates a presumption that the [jury] waiver is a voluntary, knowing and

intelligent one'"), *quoting United States v. Cochran*, 770 F.2d 850, 851 (9th Cir. 1985).  Thus, the question presented is whether the state court, having correctly identified and articulated the federal constitutional standard, applied it unreasonably to the facts of this case.

Petitioner candidly concedes that there is no case law either from the United States Supreme Court or from the Sixth Circuit Court of Appeals holding that the failure to advise a defendant of the fact that a jury verdict would need to be unanimous renders the waiver of trial by jury invalid.  In light of this concession, petitioner is hard-pressed to argue that the state court's determination of this issue represents an unreasonable application of clearly established federal law.  In fact, he does not make that argument directly, but rather urges the Court to impose that requirement because decisions such as *United States v. Martin*, 704 F.2d 267 (6th Cir. 1983) and *Sowell v. Bradshaw*, 373 F.3d 821 (6th Cir. 2004) have stressed "unanimity as one of the most important aspects of the jury right" and "strongly recommend" giving that information to a defendant who is considering a jury waiver.  Responsive Memorandum Doc. #7, at 25.  Such statements are not nearly enough, however, to make advice about jury unanimity a "clearly established" prerequisite to a valid jury waiver, and a decision which reads these statements for what they are - indications of a "best practices" approach, but not a constitutional minimum - can hardly be said to be unreasonable.

In *Sammons*, one of the cases cited in *Bays* (a decision upon which the Fifth District Court of Appeals relied), the Court of Appeals recognized that other courts of appeals

had, as an exercise of their supervisory powers over the lower federal courts, required advice about jury unanimity to be given to a defendant who was contemplating a jury waiver. *See, e.g., United States ex rel. Williams v. DeRobertis,* 715 F.2d 1174, 1180 (7th Cir.1983). However, the court noted that it had previously declined to join the Seventh Circuit in this approach, and specifically noted that even the Seventh Circuit's decision did not purport to make this a rule of constitutional dimension. *Sammons,* 918 F.2d at 597.

Since *Sammons,* the Court of Appeals has not changed its approach to this issue. For example, in *Sowell,* one of the cases upon which petitioner relies, the court reversed a district court's grant of a writ on grounds that various aspects of the right to a jury trial were not explained to the defendant and that such failure rendered his waiver invalid, noting that "the *Martin* court clearly held that colloquies are not constitutionally required and that an extremely perfunctory waiver with no colloquy was constitutionally adequate" and that "[t]he district court erred in treating the dicta in *Martin* as setting forth a statement of constitutional law." *Sowell,* 372 F.3d at 833-34. Other district courts, when faced with a similar issue, have expressed a preference for a more extensive colloquy about jury waivers, but, at the same time, have concluded that it is not possible to treat state court decisions finding waivers executed with little or no colloquy, and no affirmative evidence that advice about unanimity was given, as unreasonable. *See, e.g., D'Ambrosio v. Bagley,* 2006 WL 1169926, *41 (N.D. Ohio March 24, 2006). Neither can this Court reach that conclusion. Therefore, petitioner's sixth claim for relief also lacks merit.

## VIII. CONCLUSION

-38-

For all of the reasons cited above, the Court concludes that petitioner is not entitled to relief on his first, second, fourth, fifth and sixth claims, and that he has withdrawn his third claim for relief.  Consequently, it is **RECOMMENDED** that his petition for a writ of habeas corpus be **DENIED** and that this action be **DISMISSED**.

## IX.  PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a

certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge